ALBERT MIKLUS ET AL. *v.* THE ZONING BOARD OF APPEALS OF THE TOWN OF FAIRFIELD ET AL.

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

400

Argued December 8, 1966—decided January 5, 1967

*Irwin M. Hausman,* with whom, on the brief, was *Milton H. Hausman,* for the appellants (plaintiffs).

*John J. Darcy,* for the appellee (named defendant).

*Herbert L. Cohen,* with whom, on the brief, was *Stuart A. Epstein,* for the appellee (defendant Barbara H. Murdock).

HOUSE, J. The plaintiffs have appealed from a judgment of the Court of Common Pleas dismissing their appeal from a decision of the zoning board of appeals of the town of Fairfield which granted the application of the defendant Barbara H. Murdock for a special exception permitting the use of her property for a 120-bed hospital in a residential area of that town. It was admitted in the pleadings that the plaintiffs are aggrieved by the board's decision, and the court so found. The court decided the appeal solely on the record returned by the zoning board, and there is no other finding. Accordingly, to ascertain the legal conclusions on which the court based its judgment, we turn to the memo-

randum of decision. *Gordon* v. *Zoning Board,* 145 Conn. 597, 600, 145 A.2d 746; *Treat* v. *Town Plan & Zoning Commission,* 145 Conn. 136, 140, 139 A.2d 601. In reviewing those conclusions, we must also necessarily review the facts in the record on which the conclusions are based in order to test the correctness of the conclusions. *Kefauver* v. *Zoning Board of Appeals,* 151 Conn. 144, 146, 195 A.2d 422. That record is the one submitted to us pursuant to Practice Book § 647 as it may be supplemented by any relevant portions of the record before the board of appeals which are printed in the appendices to the briefs pursuant to Practice Book § 719.

The Fairfield zoning regulations, in § 3, division 1, paragraph 7, authorize the board of appeals to permit the use of premises for hospitals not for the insane or feeble-minded, subject to five prescribed conditions.[1] Although the basic contention of the plaintiffs is that the defendant board acted illegally, arbitrarily and in abuse of the discretion vested in it, this allegation is predicated on three grounds urged in the Court of Common Pleas: (1) The reports of the town health officer and the

---

[1] "[Fairfield Zoning Regs. § 3, div. 1 (7) (a) (1961, as amended)].
. . . 1. No building be within 50 feet of any street or lot line;

"2. Each application for a special permit must be accompanied by a report from the Town Health Officer attesting to the adequacy of the proposed site, building and facilities contained therein, for the intended use;

"3. Each application for a special permit shall be accompanied by a report from the Fire Marshal certifying as to the safety of the premises and the location of the site with respect to water supply and pressure;

"4. Each hospital must display a sign at all entrances not larger than 4 x 5 feet, identifying it as to type; and

"5. Any hospital authorized as a special exception herein shall comply in all respects with State Statutes and regulations adopted pursuant to such State Statutes governing the operation and maintenance of such hospitals."

fire marshal did not comply with the zoning regulations. (2) The regulations did not provide proper standards upon which the board of appeals could base a finding. (3) The proposed use would not actually be a hospital use within the meaning of the zoning regulations.

We will consider these three claims in the reverse order. The last, that the proposed use would not actually be for a hospital use, arises from certain indications in the record that the building was originally planned for the custodial care and treatment of the aged rather than for medical care. The application as presented to the board, however, was expressly for hospital uses, and the special exception was granted for that specific restricted use. The board is not required to anticipate that the applicant would later violate the zoning regulations by a use not authorized by the special exception for the hospital use, and should such a violation occur, the ready remedy is by proper legal action at that time.

With respect to the second claim, the court noted: "The standards as laid down in the Regulations are very spare but are not necessarily vague." It is also significant that before the adoption of § 3, division 1, paragraph 7, of the regulations in August, 1960, hospitals were permitted uses without special exceptions in residential districts such as the zone here involved. Accordingly, the added requirement of a special exception for hospital use involved a new limitation on an existing permitted use rather than the creation of a newly permitted use subject to conditions. In any event, the regulations contain five specific requirements, quoted in the footnote, for a hospital use special exception. The first three of these are conditions precedent to the granting

of a special exception, and the remaining two requirements pertain to the operation of the hospital once it is permitted. The court reasonably concluded that the regulations contained sufficiently definite, although limited, standards to guide the board in the exercise of its discretion to grant special exceptions for hospital uses and that the special exception here issued was "subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values." General Statutes § 8-2.

The remaining claim of the plaintiffs advanced in the trial court, assigned as error and pursued in their brief raises a question as to whether the communications from the health officer and fire marshal complied with the requirements of the zoning regulations. As to both communications, the plaintiffs contend that, as phrased, they do not constitute "reports" within a strict dictionary meaning of that word but are statements of opinion and conclusions. The board was not required to apply such a highly technical and restricted meaning to the word and could reasonably and properly conclude that the representations from the respective officials were reports within the common meaning of that term and as used in the regulations. The letter to the board from the fire marshal represented that he found the location for the proposed new hospital adequate for the fire department with respect to water supply and pressures. That the communication from the health department was on stationery indicating that it was "Town of Fairfield, Inter-Office Correspondence" from that department to the zoning board of appeals in no way disqualifies it as a report as that term is used in the regulations. Although its contents are somewhat lacking in speci-

ficity, the communication does indicate that the health department reviewed the preliminary plans and, as corrected, "accepts the general plan of the 120 bed hospital for this site." The board could reasonably conclude that the contents of these communications satisfied the report requirements of the regulations.

An additional attack, based on two circumstances, was made on the report from the health officer. The report did not bear the written signature of the health officer, but instead the name and designation "H. Patterson Harris, Jr., M.D. Acting Director of Health" was typed at the conclusion of the instrument and beneath that typed signature was the written signature of Leonard T. O'Neill with the typed identification of "Public Health Sanitarian." Also, as originally submitted, the instrument referred to the proposed hospital as one for 90 beds rather than 120. During the course of the hearing the number was corrected by O'Neill to read "120," the number recited in the application and in the public advertisement for the hearing on the application.

So far as the signature on the report is concerned, we have little in the record by which to test the board's acceptance of the instrument as a duly authorized report from the health officer executed by his authorized agent. That the board did so is indicated by the fact that the report was joined into one exhibit with the report of the fire chief in the return to court made by the board. The plaintiffs' brief has no appendix, and there is nothing in the record to indicate that the plaintiffs in any way, at the hearing before the board, challenged or questioned O'Neill's authority to sign for the health officer as his agent. "In the appeal to this court, it was incumbent on the plaintiffs to set forth, in an

appendix to their brief, such portions of the record returned by the . . . [board], but not included in the printed record, as are asserted to be material in support of their claims." *Nielson* v. *Zoning Commission,* 149 Conn. 410, 413, 180 A.2d 754; Practice Book § 719. The appendix to the brief of the defendant Barbara H. Murdock, on the other hand, contains testimony from O'Neill concerning the report. He appeared at the hearing and there made the correction in the report changing "90" beds to read "120" beds. It appears that he was questioned both by the plaintiffs' counsel and by the chairman of the board and testified that "we" did tests on the subject property in conjunction with the state health department, that the plan was the same plan "that we approved back about six or seven months ago" and that a typographical error was made in writing "90" rather than "120." To a specific question from the chairman, "Are you ready in your official position to state for the record that it was intended to be 120 beds and that was agreed?" O'Neill replied: "That is correct."

It therefore does not appear that any question was raised at the hearing as to O'Neill's authority to sign the report for the health officer. It appears to have been specifically raised by the plaintiffs for the first time in their brief in this court where they comment that "the instrument which purports to be a report of the Town Health Officer was submitted by one identified as the Public Health Sanitarian." Even here, the question of his authority to act for the health officer is not pressed, and the next sentence in the brief indicates the reason for the foregoing comment: "This, in and of itself, would probably be of little significance, but for the fact that the testimony of the Public

Health Sanitarian indicates that he did not make any soil test in connection with the petition involved."

An unusual circumstance is worthy of note. The return made by the board indicates that the hearing which gave rise to the present appeal was the fourth hearing by the board on an application for a special exception for a hospital on this site. Each of the prior hearings was, for various reasons unconnected with the merits of the application, ineffective. The death of the husband of the present applicant and, at another time, the failure of the board properly to advertise an earlier hearing after which a permit was granted required this fourth hearing. The return of the board in connection with the present application discloses all this prior history, as well as the prior tests and investigations and the three earlier fire and health reports, all of which indicate that the board was familiar with the entire situation even before any evidence was offered at this fourth hearing.

As the trial court aptly noted in its memorandum of decision: "The plaintiffs had an opportunity to offer evidence to the Board that the site could not safely or adequately accommodate the proposed use and could have done it either through experts of their own or by cross examination of the Fire Marshal and Health Officer. Proceedings before an administrative board are informal and the board is not bound by strict rules of evidence and may act upon facts which are known to it, even though they are not produced at the hearing. The only requirement is that the conduct of the hearing shall not violate the fundamentals of natural justice. *Parsons v. Board of Zoning Appeals,* 140 Conn. 290 [99 A.2d 149]."

"The plaintiffs had the burden of proving that the action of the board was illegal, arbitrary or in abuse of its discretion." *Hall* v. *Planning & Zoning Board,* 153 Conn. 574, 577, 219 A.2d 445; *Lupinacci* v. *Planning & Zoning Commission,* 153 Conn. 694, 699, 220 A.2d 274. The conclusion of the trial court that the plaintiffs failed to sustain this burden cannot be disturbed.

There is no error.

In this opinion the other judges concurred.