[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an administrative appeal by the plaintiff from a decision of the defendant Zoning Board of Appeals of the Town of Cromwell upholding a lease and desist order issued by the Zoning Enforcement officer of the Town of Cromwell to the plaintiff ordering the plaintiff to lease illegal activity at property owned by the plaintiff.
Facts
The plaintiff is the owner of property located at 204 Main Street in Cromwell, Connecticut. The property is located in a Waterford Mixed Business District (WMXD). Prior to June 5, 1990, the plaintiff used the property for the storage and maintenance of nursery equipment, which use was a nonconforming use. On June 5, 1990, the defendant granted the plaintiff a special permit approving a "Change of Non-Conforming Use: to store and maintain construction equipment in the WMXD zone". The permit was issued to the plaintiff on July 10, 1990.
After receiving the permit, the plaintiff entered into a contract with Northeastern Contracting Company to allow the latter to use the site for repair and maintenance of equipment. Northeastern Contracting Company uses the property for a Construction Company operation, including office use involving a secretary, telephone and fax machine, outside storage of construction equipment and materials and employees' parking.
On July 13, 1990, the Zoning Enforcement Officer issued an order to cease and desist, advising the plaintiff that he was "in violation of the following Town of Cromwell's Zoning Regulations:
 1. Article IV, Section IV, Paragraph 1: `Nonconforming Uses and Structures'
 2. Article III, Section III, Paragraph 9 `Special Flood Hazard Area Regulation' CT Page 3432
 3. Article III, Section III, Paragraph 16: `Waterfront Mixed Use Development District'"
The cease and desist order directed the plaintiff "to Cease all illegal activity located at 204 Main Street and come in compliance with your Special Permit granted to you by the Town of Cromwell's Zoning Board of Appeals on June 5, 1990." The order contained no specific facts, but simply referred to the three sections of the zoning regulations quoted above.
The plaintiff appealed the cease and desist order to the defendant. After a public hearing, which was held on August 7, 1990, the defendant voted to uphold the cease and desist order. No reasons were given by the defendant for its decision.
Aggrievement
At the hearing held before the court on January 7, 1991, the court found that the plaintiff is the owner of the property in issue and, therefore, is aggrieved and entitled to bring this appeal. See Bossert Corporation v. Norwalk, 157 Conn. 279, 285 (1968).
The plaintiff argues that the action of the defendant was illegal, arbitrary and capricious in that:
 1. The cease and desist order issued by the Zoning Enforcement Officer is too vague to be upheld by the defendant.
 2. The uses conducted upon the property by the plaintiff do not violate the zoning ordinances of the Town of Cromwell.
 3. The plaintiff has not violated any provisions of the sections of the zoning regulations cited by the Zoning Enforcement Officer in his cease and desist order.
Vagueness of Cease and Desist Order
The cease and desist order issued by the Zoning Enforcement Officer stated that plaintiff was in violation of certain zoning regulations of the Town of Cromwell, specifically Article IV, Section IV, Paragraph 1, "Non-conforming Uses and Structures," Article III, Section III, Paragraph 9, "Special Flood Hazard Area Regulation," and Article III, CT Page 3433 Section III, Paragraph 16 "Waterfront Mixed Use Development District." The plaintiff argues that since the Zoning Enforcement Officer did not state the specific violations he felt existed on the plaintiff's property, the cease and desist order was improper and too vague to be upheld by the defendant.
The record indicates that the claim of vagueness was not raised before the defendant. The plaintiff argues that his statement at the public hearing that "I just don't understand any of this," followed by statements that this was the result of harassment, sufficiently raise the issue of vagueness. The plaintiff further claims that if the cease and desist order had been clearly written, the plaintiff would not have appeared before the defendant without understanding the nature of the charges against him.
The statements by the defendant regarding a lack of understanding on his part are not the same as statements alleging that the cease and desist order is vague and did not sufficiently raise the issue of vagueness at the public hearing.
"To allow a court to set aside an agency's determination `upon a ground not theretofore presented. . . deprives the Commission of an opportunity to consider the matter, make its ruling, and state the reasons for its action.'" Hartford Electric Light Co. v. Water Resources Commission, 162 Conn. 89, 107 (1971). In the present case, the defendant was not given an opportunity to consider the vagueness, to make a ruling and to state its reasons therefor, and the court has been deprived of the defendant's findings and conclusions on this issue.
Thus, the plaintiff may not raise the claimed vagueness of the cease and desist order for the first time in this appeal.
Violation of Zoning Regulations
Various activities are taking place on the plaintiff's property and, in his brief, the plaintiff outlines each of these uses and provides reasons why they are not in violation of the Cromwell Zoning Regulations. Both parties concede that the storage and maintenance of construction equipment is specifically permitted by the special permit issued to the plaintiff.
The property is being used for an office. According to the plaintiff, Northeastern Contracting Company's office on the property is both a "business office" and a "corporate CT Page 3434 office" and, therefore, is a permitted use in the Waterfront Mixed Use Development District.
Article III, Section III, Paragraph 1.F.2 of the zoning regulations provides as follows:
 The number (2) indicates that use may be permitted when authorized by the Planning and Zoning Commission after review and approval of site plan of development under Section 8-3B and consideration of relationship to adjoining properties as to health, safety and welfare. Where the Commission determines that a particular use will create a significant impact on surrounding properties or the Town of Cromwell as a whole, it may, at its discretion, determine that a Special Permit may be required.
Section 82.C of the Use Regulations Table set forth in Article III, Section III, Paragraph 2 of the zoning regulations, includes the number (2) for corporate and business office in the WMXD district.
While the plaintiff acknowledges that office use requires a special permit pursuant to Article III, Section III, Paragraph 1.F.2, he nevertheless argues that this requirement does not change the fact that office use is a permitted use. The plaintiff relies on Article I, Section I, Paragraph 3 of the zoning regulations which defines "Use, Permitted" to include "all uses except non-conforming uses."
The use of the plaintiff's property for a corporate and business office is subject to Article III, Section III, Paragraph 1.F.2, which requires authorization by the Planning and Zoning Commission after review and approval of a site plan. Moreover, Article III, Section III, Paragraph 16.C.1 provides that "(a)ny proposed development within a Waterfront Mixed Use Development District shall require a special permit." There is nothing on the record to indicate that the plaintiff ever applied for a use permit for a business and corporate office on his property as required by Article III, Section III, Paragraph 1.F.2 or for a special permit as required by Article III, Section III, Paragraph 16.C.1. Therefore, the use of the property as a business and corporate office is in violation of the zoning regulations.
The property is also being used for the storage of construction materials. According to the plaintiff, the CT Page 3435 term "construction equipment," for which the special permit was granted to the plaintiff, is a very broad term and should be construed to cover any equipment used in construction, include not only vehicles, but also the heavy materials utilized with these vehicles such as pipes, cement fixtures and similar material.
The special permit issued to the plaintiff approving a "change of non-conforming use: to store and maintain construction equipment in the WMXD zone" does not authorize the plaintiff to store and maintain construction materials. In the original special permit application submitted to the defendant the plaintiff requested permission for the "continuation of nonconforming use by a construction co. — this use being essentially the same as the present use Repair + storage of trucks etc." The plaintiff also submitted a notarized statement to the Planning and Zoning Commission stating that the property ". . . has been leased by Millane Nurseries since January 1, 1987 for the sole purpose of repair, maintenance and storage of said Company's equipment."
A nonconformity is a use or structure which is prohibited under the zoning regulations, but is allowed by virtue of its existence at the time the zoning regulations are adopted. Adolphson v. Zoning Board of Appeals,205 Conn. 703, 710 (1988). Nonconforming uses should not be allowed to increase, but should instead be abolished or reduced to conformity as soon as possible. Id. The rule of nonconforming use protects the "right" of a user to continue the same use of the property as existed prior to the adoption of the zoning regulations. Helbig v. Zoning Commission, 185 Conn. 294, 306 (1981). A change in the character of a use, however, constitutes an unlawful extension of a prior use. Helicopter Associates, Inc. v. Stamford,201 Conn. 700, 716 (1986). "The legality of an extension of a nonconforming use is essentially a question of fact." Id.
The court finds that the storage and maintenance of construction materials on the plaintiff's property is an illegal extension of the prior nonconforming existing use, i.e., the storage and maintenance of nursery equipment.
Employees' parking is another use taking place on the property. According to the plaintiff, the parking is an accessory use as defined in Article I, Paragraph 3 of the zoning regulations. However, employees' parking on the property is improper inasmuch as it constitutes an extension of a non-conforming use. See Raffaele v. Planning and Zoning Board of Appeals, 157 Conn. 454, 462 (1969). CT Page 3436
Cease and Desist Order
The plaintiff claims that he did not violate any of the regulations cited in the cease and desist order.
The first section of the zoning regulations aired by the Zoning Enforcement Officer was Article IV, Section IV, Paragraph 1: "Non-conforming Uses and Structures." Paragraph 1.A.1 of this article provides that a nonconforming use shall not be "(c)hanged to another nonconforming use without a Special Permit from the Board of Appeals, and then only to one equally, or more nearly in conformity."
The plaintiff argues that he has changed his nonconforming use, the storage and maintenance of nursery equipment, to a conforming use, namely office use and that nothing in Article IV, Section IV, Paragraph 1 of the zoning regulations prohibits this. According to the plaintiff, the current office use is permitted under the definition of "permitted use" in the zoning regulations. Therefore, the plaintiff claims, the use of the office constitutes a change for a portion of the property from a nonconforming use to a permitted use.
Under the plaintiff's theory, a property owner with a nonconforming use would have greater rights than one without a nonconforming use because the former would not be required to obtain a special permit before changing the use of his land to a use permitted by special permit under the zoning regulations. The plaintiff relies on Adolphson v. Zoning Board of Appeals, supra, in support of his position. In Adolphson, the applicant was permitted to convert the subject property from a nonconforming use as a casting foundry to an automobile repair shop, a prohibited use in the district where the property was located. On appeal, the court held that the action of the zoning board of appeals was proper, reasoning that the property was being changed to a "less offensive" nonconforming use. Id. at 708.
According to the plaintiff, the Adolphson case should be read as allowing a person with a nonconforming use to change it to a prohibited use. The plaintiff argues in his brief that no other applicant would have been allowed to do this; rather, this is a special circumstance because of the nonconforming use of his property.
The Adolphson case does not provide support for plaintiff's argument that a person with a nonconforming use has greater rights to change that use than would be available to any other applicant. The Adolphson case turned on CT Page 3437 the fact that the change from a casting foundry to an automobile repair shop was a change to a "less offensive" non-conforming use.
In an administrative appeal a trial court is not at liberty to substitute its judgment for that of the local authority and is only to determine whether the local authority acted illegally, arbitrarily or in abuse of its discretion. See Frito-Lay, Inc. v. Planning Zoning Commission, 206 Conn. 554, 572-73 (1988). The authority's action is to be sustained if any one of the reasons stated is sufficient to support the decision. Primerica v. Planning Zoning Commission, 211 Conn. 85, 96 (1989). "It is desirable for the zoning authority to state on the record the reasons for its action, since if it does not, the trial court must search the record to find a basis for the action taken." A.P. W. Holding Corporation v. Planning Zoning Board, 167 Conn. 182, 186 (1974).
In the present case, the defendant did not state on the record its reasons for its action. However, the following testimony from the Zoning Enforcement Officer appears on pages 3 and 4 of the transcript of the public hearing held on August 7, 1990:
 I found that through the permit that Mr. Millane achieved through the ZBA versus what was going on there were not one in the same. . . (w)hat I found down there is a construction company operation, the secretaries, the phones, the fax machines inside, outside storage of construction equipment, material and employees' parking. Prior to this company moving in, the property showed very little activity, maybe once a month or so. You may see some activity around the building, but all the activity was contained inside and not really outside.
Based on the evidence in the record, the court finds that the action of the defendant may be sustained on the ground that the plaintiff has unlawfully expanded the nonconforming use permitted by the special permit which was approved by the defendant on June 5, 1990 and that the defendant did not act illegally, arbitrarily or in abuse of its discretion in upholding the cease and desist order issued by the Zoning Enforcement Officer.
Conclusion CT Page 3438
For the reasons stated above, the plaintiff's appeal is dismissed.
HENDEL, J.
Judgment entered in accordance with foregoing memorandum of decision.
Clerk